UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X

HALLIE LORBER and JAMES FISCHER, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

NIRVANA WATER SCIENCES CORP. and JOHN DOES 1-10,

Defendants.

--------------------------------------X

**MEMORANDUM AND ORDER**

25 Civ. 3370 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Hallie Lorber and James Fischer bring this action against their former employer, Nirvana Water Sciences Corporation ("Nirvana") and ten John Doe defendants, asserting claims for violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law, as well as claims for breach of contract and unjust enrichment. The claims all relate to Nirvana's alleged failure to pay each plaintiff's salaries for a few months' period and plaintiffs' ensuing termination.

Before the Court is defendant Nirvana's motion to dismiss. For the reasons stated herein, the Court grants in part and denies in part the motion.

## I. Factual Background

### a. Nirvana

Nirvana is a Florida corporation with offices in Sarasota, Florida. ECF No. 14 ("FAC"), Ex. A. Its principal place of

business and corporate headquarters are in New York. Id. ¶ 4. Nirvana is an innovative wellness company focused on functional beverages, id. ¶ 4; it specializes in bottling, marketing, and selling spring and beta-hydroxy beta-methylbutyrate- and electrolyte-infused water, ECF No. 18 ¶ 2.

**b. Hallie Lorber**

Lorber is a New Jersey resident. She first began working for Nirvana as a marketing consultant in late summer 2023. FAC ¶ 11. In January 2024, Nirvana asked Lorber to be its Executive Vice President of Marketing, id. ¶ 13, and subsequently, on February 1, 2024, Lorber and Nirvana entered into a written employment agreement, id. ¶¶ 15, 78(a); id., Ex. A (the "Lorber Agreement" or "Agreement"). The Lorber Agreement was for a term ending December 31, 2026. Lorber Agreement § 3.[1] As relevant here, it provided that Lorber would receive a base salary of $200,000. Id. § 4.01. It included a termination provision providing that, should Lorber be terminated without cause, she would be eligible to receive, among other things, "all accrued but unpaid Base Salary" and "an amount equal to three (3) months of Employee's then Base Salary." Id. § 7. The Agreement further included a choice-of-law clause providing for the application of New York law. Id. § 14.06.

[1] In considering a motion to dismiss, we may consider the facts alleged in the complaint as well as documents attached to the complaint as exhibits, like the Lorber Agreement here. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

From February 2022 until the fall of 2024, Lorber performed her duties, and was paid accordingly, with no issues. FAC ¶ 19. However, on October 25, 2024, Lorber was paid only "approximately forty percent (40%) of her weekly salary." Id. Lorber alleges that, from that point onward, she "was not paid minimum wages." Id. Lorber contacted her supervisor, Greg Clark, about her failure to be paid. Id. ¶ 20. Mr. Clark informed her that Nirvana was taking certain steps to acquire enough money to pay its employees, and asked Lorber to continue to work. Id.

On January 16, 2025, Lorber notified Nirvana via letter that it was in breach of the Lorber Agreement. FAC ¶ 24; see id., Ex. C.

On January 20, 2025, Nirvana informed Lorber that she was terminated. FAC ¶ 25. Lorber alleges that she was not terminated for cause. Id. ¶ 26.

**c. James Fischer**

Fischer is a resident of the State of Connecticut. FAC, Ex. D; see also ECF No. 25 ("Opp.") at 11 n.2. He was offered the position of Vice President of Sales at Nirvana via offer letter in November 2022. FAC ¶ 28; id., Ex. D ("Fischer Offer Letter" or "Offer Letter"). The Offer Letter stated that Fischer's term of employment would run for three years, from December 5, 2022, to December 4, 2025. FAC ¶ 28; Fischer Offer Letter at 1. It provided for an annual salary of $185,000 as well as various cash and stock

option bonuses. Fischer Offer Letter at 1. And it stated that, until a "definitive Employment Agreement" was executed between the parties, "neither party hereto shall have any binding obligation to the other under or in connection with this Employment Offer Letter." Id. at 2.

There is no indication that the aforementioned "definitive Employment Agreement" was ever executed. However, despite the lack of a formal employment agreement, Fischer performed his duties as Vice President of Sales for over two years. FAC ¶¶ 28, 30, 35. In that role, Fischer "often went to Nirvana's headquarters in Forestport, New York," "manage[d] over 200 accounts in New York City," and was often required to be in New York City "as part of his usual job duties." Id. ¶ 30.

Fischer's employment -- and compensation therefor -- continued in the normal course until fall 2024, when, like Lorber, he began to receive a reduced salary. FAC ¶ 31. On October 25, 2024, Fischer was paid "less than the amount owed." Id. On November 8, 2024, Fischer was "not paid his full salary." Id. ¶ 34. He was "not paid at all" on November 22, 2024. Id. He received a full salary payment on December 6, 2024. Id. He then did not receive any further salary payments. Id. ¶ 35. Like Lorber, Fischer continued to work during this period. Id. ¶ 38. And like Lorber, Mr. Clark "assured him that he would be paid." Id. ¶ 36.

Fischer was terminated on January 20, 2025. FAC ¶ 35.

**II. Procedural Background**

Plaintiffs initially filed suit on April 23, 2025. ECF No. 1. After defendant moved to dismiss, ECF No. 10, the Court noted that plaintiffs retained the right under Federal Rule of Civil Procedure 15(a)(1)(B) to amend their complaint once as a matter of right and directed plaintiffs to file any amended complaint within the Rule's 21-day window, ECF No. 13. Plaintiffs exercised that right and filed their First Amended Complaint on June 13, 2025. ECF No. 14. Defendant again moved to dismiss. ECF No. 17. Plaintiffs opposed. ECF No. 25.

Following the briefing on the motion to dismiss, this case was reassigned to me on July 2, 2026.

**III. Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S.

at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

## DISCUSSION

Plaintiffs' amended complaint asserts seven claims. These claims generally fall into three categories: (1) federal wage claims under the FLSA; (2) state wage and retaliation claims under the New York Labor Law; and (3) contract and unjust enrichment claims. Defendant moves to dismiss all of plaintiffs' claims as well as the ten John Doe defendants. We address each category in turn.

### I. FLSA Claims (Count One)

Plaintiffs allege that defendant violated the FLSA by failing to pay the minimum wage and overtime pay they are each due. They seek to bring these claims on behalf of a proposed collective of similarly situated plaintiffs. Defendant, however, argues that plaintiffs are not covered by the FLSA. The Court begins its analysis by considering that threshold question.

#### a. Plaintiffs' Exempt Status

Defendant contends that neither Lorber nor Fischer qualify for the FLSA's protection because the two were highly compensated

executives. ECF No. 19 ("Mot.") at 17-20.[2] In response, plaintiffs assert that, "even as exempt employees," they were "entitled to be paid unpaid minimum wages." Opp. 6.[3]

In considering defendant's argument, the Court first begins with a brief overview of the applicable statutory and regulatory scheme. The FLSA provides certain protections for covered employees, including by requiring employers to pay covered employees a minimum wage, see 29 U.S.C. § 206, and overtime for all hours worked in excess of forty hours per week, see id. § 207(a)(1). These provisions, however, do not apply to all employees: The FLSA exempts from these two requirements (1) "any employee employed in a bona fide executive, administrative, or professional capacity," id. § 213(a)(1); and (2) "highly compensated employees," 29 C.F.R. § 541.601(a).

Each exemption operates slightly differently, but it is sufficient for the Court's purposes today that, to qualify for either exemption, an employer must compensate its employees "at a

---

[2] A claim that an employee is exempt from the FLSA is an affirmative defense. Dejesus v. JF Mgmt. Servs., LLC, 726 F.3d 85, 91 n.7 (2d Cir. 2013). However, courts may consider affirmative defenses "raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998), as it does here.

[3] The Court construes this argument as an argument that plaintiffs are non-exempt employees for the period during which they were unpaid.

rate not less than $684 per week" on a salary or fee basis.[4] 29 C.F.R. § 541.100(a)(1); id. § 541.600; id. § 541.601(b)(1). In other words, an employee must meet the requirements of either exemption and be paid at least $684 per week on a salary or fee basis to be exempt from the FLSA's minimum wage and overtime protections. It is the employer's "burden [to prove] that its employees fall within an exempted category" of the FLSA. Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012).

The requirement that an employee be paid "at least $684 per week" raises the question of whether an employee who at one point is exempt under the FLSA may "lose" his exempt status when his salary decreases below the $684 threshold. A straightforward reading of the relevant regulations, each of which require an exempt employee to be paid "not less than $684 per week," id. § 541.100(a)(1) (executive employees); id. § 541.600(a) (same), or "at least $684 per week," 29 C.F.R. § 541.601(b)(1) (highly compensated employees), demonstrates that the employee must lose

[4] In April of 2024, the Department of Labor finalized a rule increasing the minimum salary for exemption from $684 per week to $844 per week. https://www.dol.gov/sites/dolgov/files/WHD/flsa/ot-541-final-rule.pdf. However, that rule was challenged in court and vacated nationwide by the Eastern District of Texas in November 2024. Texas v. United States Dep't of Labor, 756 F. Supp. 3d 361, 398-99 (E.D. Tex. 2024). In May 2026, the Department of Labor formally rescinded the 2024 rule and restored the salary threshold to $684 per week. 91 Fed. Reg. 27833 (May 15, 2026); 29 C.F.R. § 541.600, -.601. It is not necessary to the Court's decision today to undertake an analysis of which figure applies to plaintiffs' claims.

the exemption when his salary drops below the $684 per week threshold.[5]

Here, there is no question that, at annual salaries of $200,000 and $185,000,[6] respectively, both Lorber and Fischer received compensation greater than $684 per week while they were receiving salary payments from Nirvana. However, each alleges receiving less than their due salary during the relevant period.

---

[5] Courts appear to be split on the answer to this question. Compare Pastuizaca v. Mihwa Jo Corp., 2025 WL 437929, at *6 (E.D.N.Y. Feb. 8, 2025) (plaintiff was not an exempt employee under the New York Labor Law during the period in which he was not paid the requisite salary) (noting that the New York Labor Law and FLSA exemptions are "substantially similar"); Prakash Jones v. Morris + D'Angelo, 2024 WL 4428980, at *6 (N.D. Cal. Oct. 4, 2024) (employee whose position provided for an annual salary of $225,000 but was "not paid at all" for a certain period was "entitled to overtime pay" under the FLSA for that period); Aberle v. Saunders MEP, Inc., 2011 WL 2728350, at *4 (E.D. Tex. June 16, 2011) (employer's failure to pay employee requisite salary for certain weeks "destroy[ed] any exemption" for those weeks), with Ayres v. Shiver, 2021 WL 3472655, at *2 (E.D.N.Y. Aug. 6, 2021) (rejecting "[p]laintiff's argument that she is not an executive — because she earned less than $900 per week despite the terms of her contract as a result of defendants' alleged failure to pay her wages" as "meritless"); Wells v. Lottery.com, Inc., 2025 WL 2265447, at *4 (5th Cir. Aug. 6, 2025) (holding district court did not err in concluding plaintiff was highly compensated under the FLSA where plaintiff had provided no authority supporting his argument that he lost FLSA exemption status while he was unpaid). However, in light of the language of the regulations, the Court finds the first category of cases to be more persuasive.

Moreover, the Department of Labor's interpretation of the regulations supports the Court's reading. In a fact sheet, the Department explained that "[a]n employer is not prohibited from prospectively reducing the predetermined salary amount to be paid regularly to a Part 541 exempt employee during a business or economic slowdown" and that such salary reduction "will not result in loss of the exemption, as long as the employee still receives on a salary basis at least $684 per week." Department of Labor, Wage & Hour Division, Fact Sheet #70: Frequently Asked Questions Regarding Furloughs and Other Reductions in Pay and Hours Worked Issues (September 2019), https://www.dol.gov/agencies/whd/fact-sheets/70-flsa-furloughs (emphasis added). Thus, the fact sheet supports our holding that a salary reduction does result in the loss of the exemption when the employee no longer receives at least $684 per week.

[6] As a rough approximation, at a $200,000 annual salary, Lorber would have been compensated at a rate of about $3,846 per week. At a $185,000 salary, Fischer would have been compensated at a rate of about $3,558 per week.

Lorber alleges that she was "not paid minimum wages" for a period of months, and Fischer alleges that he was "not paid at all" for several pay periods. FAC ¶¶ 19, 34-35. These allegations indicate that, during at least some part of the relevant period, plaintiffs received less than $684 per week. They have thus alleged at least some period in which they would have been considered non-exempt employees.[7] That is sufficient at this stage of the litigation, and the Court therefore declines to dismiss plaintiffs' FLSA claims on the basis that plaintiffs are exempt employees.

**b. Plaintiffs' Minimum Wage & Overtime Claims**

However, plaintiffs' non-exempt status, at certain points during the relevant period, is not the end of the analysis of their FLSA claims. The Court must also consider whether plaintiffs, as non-exempt employees, have stated a claim for violations of the FLSA's minimum wage and overtime provisions.

To state an FLSA minimum wage claim, a plaintiff must allege that she was the defendant's employee, that her work involved interstate activity, and that she worked hours for which she did not receive minimum wages. Zhong v. Aug. Aug. Corp., 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007). Further, "it is sufficient for a plaintiff to allege facts about her salary and working hours, such

[7] It is not necessary -- nor even possible -- at this stage for the Court to consider which weeks Lorber and Fischer would have been considered exempt or non-exempt employees. It is sufficient that both allege receiving less than $684 per week during at least part of the relevant period.

that a simple arithmetical calculation can be used to determine the amount owed per pay period." Tackie v. Keff Enters. LLC, 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014) (citing Zhong, 498 F. Supp. 2d at 269).

Here, plaintiffs have stated a claim for a violation of the FLSA's minimum wage provisions. Lorber alleges she was employed by Nirvana as the company's Executive Vice President of Marketing, and Fischer alleges he was employed as the company's Vice President of Sales. FAC ¶¶ 13-17, 28-30. Lorber alleges that she often worked "more than 50 hours per week," id. ¶ 18, and both plaintiffs allege Nirvana failed to pay them minimum wages for at least part of their employment, id. ¶¶ 19, 31-35. These allegations are limited but sufficient at this stage. See Tackie, 2014 WL 4626229, at *3 (holding allegations that plaintiff "worked a fairly regular schedule of forty hours per week" but was "paid only sporadically" sufficient to state an FLSA minimum wage claim). The Court notes, though, that plaintiffs must provide further factual support to pursue their FLSA minimum wage claims moving forward.

However, plaintiffs' FLSA claim is dismissed to the extent plaintiffs seek to recover for a violation of the FLSA's overtime protections. Plaintiffs admit that they are not suing for overtime violations. Opp. 6 (stating that plaintiffs "are not suing for overtime pay but included it in the event the case is certified as a collective" or class action); see also ECF No. 27 ("Reply") at 2.

**c. The Putative Collective**

Plaintiffs also seek to bring their FLSA claims on behalf of a collective. FAC ¶¶ 48-50. Defendant asserts that plaintiffs "identify no other employees at all" or "explain why those unspecified people" are "similarly situated" to plaintiffs. Mot. 7.

At the motion to dismiss stage, "plaintiffs must, at least, provide 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs . . . were victims of a common policy or plan that violated the law.'" Zhong, 498 F. Supp. 2d at 630 (quoting Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)).[8]

Plaintiffs have not sufficiently alleged an action on behalf of others similarly situated. There is absolutely no indication in the First Amended Complaint that either plaintiff could possibly represent a collective class or that there is anyone else similarly situated. Plaintiffs include only barebones allegations regarding those similarly situated, such as "[t]he Named Plaintiffs are similarly situated to the proposed collective considering that they are owed minimum wages and/or overtime pay for the proposed

[8] Courts in this Circuit often deny motions to dismiss collective claims on the basis that such decisions should be made at the certification stage in the litigation. See, e.g., Tecocoatzi-Ortiz v. Just Salad LLC, 2019 WL 1585163, at *5-6 (S.D.N.Y. Apr. 12, 2019); Rotthoff v. New York State Cath. Health Plan, Inc., 2020 WL 5763862, at *4 (S.D.N.Y. Sept. 28, 2020). However, the complaints in those cases include far more detail about similarly situated plaintiffs than does the Amended Complaint here.

collective period." FAC ¶ 52. That is not sufficient. Where "[t]he complaint states in its caption that 'others similarly situated' are . . . parties to the action, but these 'others' are referenced only minimally in the body of the complaint itself," and plaintiffs do not reference "a policy to which other employees are subject, nor to any company policy at all," there is no "factual basis from which the Court can determine similarly situated plaintiffs do exist." Zhong, 498 F. Supp. 2d at 631. Plaintiffs therefore have not sufficiently pleaded their FLSA collective claim.

## II. New York Labor Law Claims (Counts Two, Three, and Seven)

Plaintiffs also bring claims for violations of various provisions of the New York Labor Law. However, as with the FLSA claims, defendant contends that plaintiffs are not covered by the New York Labor Law. The Court again begins its analysis with that threshold question.

### a. Application of New York Labor Law

Defendant contends that the New York Labor Law does not apply because the First Amended Complaint does not allege that either Lorber or Fischer "worked" in New York during the relevant period. Mot. 14-16. The Court therefore must consider whether plaintiffs -- two non-New-York residents who clearly allege that they worked, at certain points, in the State -- may avail themselves of the protections of the New York Labor Law.

At the outset, we note a few general principles. It is well established that the New York Labor Law "does not apply extraterritorially." Warman v. Am. Nat'l Standards Inst., 2016 WL 3676681, at *2 (S.D.N.Y. July 6, 2016) (collecting cases). That bar on extraterritorial application means that the Labor Law does not apply to labor "performed exclusively outside New York." Rodriguez v. KGA Inc., 155 A.D.3d 452, 453 (1st Dep't 2017); see also Kingston v. Int'l Bus. Machs. Corp., 187 A.D.3d 578, 579 (1st Dep't 2020); Smith v. Vera Inst. of Justice, Inc., 2023 WL 11879682, at *15 (E.D.N.Y. Aug. 11, 2023) (collecting cases); O'Neill v. Mermaid Touring Inc., 968 F. Supp. 2d 572, 579 (S.D.N.Y. 2013). Thus, a plaintiff who works and lives entirely outside of the State of New York may not bring a claim under the Labor Law. Magner v. Alvanon, Inc., 2026 WL 550017, at *5 (S.D.N.Y. Feb. 26, 2026) (dismissing New York Labor Law claim where plaintiff "worked and lived exclusively in Pennsylvania"). However, the fact that a plaintiff resides outside of the State is not dispositive. "Instead, '[t]he crucial issue is where the employee is "laboring," not where he or she is domiciled.'" Alam v. Fairstead Mgmt. LLC, 2025 WL 622587, at *6 (S.D.N.Y. Feb. 26, 2025) (quoting O'Neill, 968 F. Supp. 2d at 579). Thus, a complaint alleging that a plaintiff generally worked elsewhere but labored in New York "for a period of time" may survive a motion to dismiss. See id. (denying motion to dismiss where plaintiff pleaded that he "generally worked

from Maryland" but that he also "labored at [the company's] New York offices for a period of time").

Here, both plaintiffs allege that they labored in New York at least some of the time during their employment with Nirvana. See FAC ¶¶ 17, 30; see also Opp. 3. Lorber alleges "she was required to attend numerous meetings at Nirvana's headquarters in Forestport, New York" and "weekly meetings in New York City," and that she "often attended trade shows and other functions in Manhattan." FAC ¶ 17. Fischer alleges that he "often went to Nirvana's headquarters in Forestport, New York" and that he was "require[ed] . . . to be in New York City often as part of his usual job duties." Id. ¶ 30. These allegations are sufficient at this stage of the litigation. See Alam, 2025 WL 622587, at *6.

**b. Plaintiffs' Claims Under the New York Labor Law**

As noted previously, plaintiffs allege that defendant violated a host of provisions of the New York Labor Law. Defendant first contends that plaintiffs may not sue under these statutes because they are highly paid executives. Mot. 17-22. The Court begins by addressing that argument.

Under New York law, "executives are employees" subject to the protections of the New York Labor Law "except where expressly excluded." Pachter v. Bernard Hodes Grp., Inc., 10 N.Y.3d 609, 616 (N.Y. 2008). Therefore, if plaintiffs are "executives," the Court must determine, on a section-by-section basis, whether the

relevant sections of the Labor Law apply to plaintiffs. The Labor Law defines an "executive," in part, as an employee "whose earnings are in excess of one thousand three hundred dollars a week." N.Y. Lab. L. § 190(7).[9]

Accordingly, a section-by-section analysis is unnecessary here because plaintiffs were not executives under the New York Labor Law for at least some portions of the relevant period for the same reason they were not executives nor highly compensated employees under the FLSA: They received less than the required salary for at least some of the relevant period. Like the FLSA, the New York Labor Law exemption may also be lost when an employee's pay falls below the requisite threshold. See Pastuizaca, 2025 WL 437929, at *6 (holding that plaintiff was "not an exempt employee under the NYLL for at least the [period] when he was not paid the requisite salary for exempt employees"). The Court thus declines to dismiss the New York Labor Law claims on the basis that plaintiffs were executives. See Jibowu v. Target Corp., 492 F. Supp. 3d 87, 114 (E.D.N.Y. 2020) (declining to grant summary judgment to defendant where defendant had failed to establish plaintiff was "properly classified as an exempt employee").

[9] The $1,300 threshold was in effect during the relevant period in 2024.

Next, we turn to an analysis of each of plaintiffs' claims under the New York Labor Law. Plaintiffs allege violations of (1) Section 191's requirement to pay employees at least bi-weekly and to pay employees their due wages the next pay period after termination; (2) Section 195's requirement to provide notices and acknowledgments of pay rate and payday and give notice when benefits end; (3) Section 590's requirement that an employer provide notice of the right to file for unemployment; and (4) Section 215's prohibition on retaliation.

**i. Section 191 Claims (Timely Payment of Wages)**

Section 191 of the Labor Law "guarantees the timely payment of wages by employers." Myers v. Hertz Corp., 624 F.3d 537, 543 (2d Cir. 2010). It sets forth different requirements that employers must adhere to depending on whether employees are classified as "manual worker[s]," "railroad worker[s]," "commission salespersons," or "clerical or other worker[s]." N.Y. Lab. L. § 191(a)-(d). A "clerical and other worker" includes all employees except those captured by the other three enumerated categories and "any person employed in a bona fide executive, administrative or professional capacity whose earnings are in excess of one thousand three hundred dollars a week." Id. § 190(7). In relevant part, Section 191 provides that a "clerical and other worker" "shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than

semi-monthly, on regular pay days designated in advance by the employer." Id. § 191(1)(d). It further provides that "[i]f an employee is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred." Id. § 191(3). See also Chisolm-Lucas v. Am. Airlines, Inc., 793 F. Supp. 3d 477, 486 (E.D.N.Y. 2025) (holding that Section 191 "means what it says and nothing more: that employers must pay their clerical or other employees twice per month, on regular pay days set in advance, and otherwise according to the terms of any applicable employment agreement").

Plaintiffs adequately allege that Nirvana violated these provisions. Lorber alleges that, after October 25, 2024, she was "not paid minimum wages." FAC ¶ 19. Fischer alleges that he received reduced salary payments for a few paychecks and then "received no further payments of salary. Id. ¶¶ 31-35. These allegations are sufficient at this stage of the litigation, especially where defendant has not otherwise challenged the claims.

**ii. Section 195 Claims (Wage Theft Prevention Act)**

Section 195 of the Labor Law was adopted as part of New York's Wage Theft Prevention Act. Guthrie v. Rainbow Fencing, Inc., 113 F.4th 300, 303 (2d Cir. 2024). It mandates that upon hiring of a new employee, all employers must provide the new employee with a notice containing information on, inter alia, the rate of pay,

whether payment is by the hour, shift, day, week, salary, or some other method, and the employer's contact information. N.Y. Lab. L. § 195(1). Along with the presentation of this notice, the employer shall also obtain a signed and dated written acknowledgement of receipt from the employee, presented in the employee's primary language. Id. The Act also requires employers to "furnish each employee with a statement with every payment of wages" that includes: the 1) dates of work covered by that payment of wages; 2) name of employee; 3) name and contact information of employer; and 4) rates of wage, including any deductions or allowances. Id. § 195(3). Employers who do not comply with Sections 195(1) and (3) may be liable for statutory damages. Guthrie, 113 F.4th at 303 (citing N.Y. Lab. L. § 198(1)(b), (d)).

However, a plaintiff seeking to bring a claim for New York Labor Law statutory violations must demonstrate that he has standing to do so under Article III of the Constitution. Guthrie, 113 F.4th at 308. He must "show some causal connection between the lack of accurate notices and the downstream harm." Id. Put differently, the plaintiff must "support a plausible theory as to how he was injured by the defendant['s] failure to provide the required documents." Id. (alterations adopted and internal quotations omitted).

Plaintiffs have not done so here. There is no indication anywhere in the Amended Complaint that plaintiffs suffered any

"concrete downstream harm." See Guthrie, 113 F.4th at 311. Plaintiffs do not "allege facts linking any legally cognizable injury" to defendant's "purported failure to provide wage statements" or "notice of [plaintiffs'] rate of pay, regular pay day, and such other information." Jimenez v. Green Olive Inc., 744 F. Supp. 3d 221, 239 (E.D.N.Y. 2024). Plaintiffs thus lack Article III standing to pursue a violation of the Wage Theft Prevention Act.

**iii. Section 590 Claim (Notice of Unemployment Benefits)**

Section 590(2) of the Labor Law provides that employers must "inform each employee of their right to file an application for unemployment benefits . . . at the time" of "permanent separation." N.Y. Lab. L. § 590(2). However, as with their claim under Section 195, plaintiffs also do not allege any "downstream harm" from defendant's alleged failure to provide notices of plaintiffs' right to file for unemployment insurance benefits. See Guthrie, 113 F.4th at 311. Therefore, they lack Article III standing to pursue a violation of Section 590 of the New York Labor Law.[10]

[10] The complaint does not indicate, one way or the other, whether plaintiffs applied for or received unemployment benefits, nor have the parties addressed the possible impact of the receipt of those benefits on this litigation.

**iv. Section 215 Claims (Retaliation)**

Section 215 of the Labor Law prohibits an employer from retaliating against an employee who has "made a complaint . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter." N.Y. Lab. L. § 215(1)(a).

Defendant argues that plaintiffs' failure to state a substantive New York Labor Law claim "dooms" their retaliation claim. Mot. 25. As explained, though, plaintiffs have alleged plausible claims under Section 191 of the Labor Law. Defendants do not otherwise challenge plaintiffs' claim for retaliation under the New York Labor Law. Accordingly, the Court declines to dismiss the claim. See Garcia v. ROC Nation LLC, 2025 WL 1865965, at *15 (S.D.N.Y. July 2, 2025) (declining to dismiss claim where parties had not adequately briefed the issue).[11]

**III. Contract & Unjust Enrichment Claims (Counts Four, Five, and Six)**

Plaintiffs also bring two breach of contract claims (Counts Four and Six) and a claim for unjust enrichment in the alternative (Count Five).[12] Defendant moves to dismiss these claims. As to

[11] The Court notes, however, that plaintiffs' pleading provides no or limited factual support for what is essentially a recitation of sections of the Labor Law. If plaintiffs intend to pursue these claims moving forward, they will need to supply the necessary factual support.

[12] The parties have not adequately briefed the differences between the two breach of contract claims. The Court will thus consider the claims together.

the breach of contract claims, defendant contends that plaintiffs have failed to plead any work they did for the company during the relevant period. Mot. 28-29. Defendant also contends that Fischer has no enforceable contract because the agreement at issue is merely a nonbinding offer letter. Id. at 13. As to the unjust enrichment claim, defendant asserts that the claim is duplicative of the breach of contract claims and that plaintiffs have failed to plead a benefit received by Nirvana. Id. at 30. The Court will address these arguments seriatim.

First, defendant argues that plaintiffs have failed to plead any work they did for defendant during the relevant period. Mot. 28-29. However, Lorber alleges that, even after she was no longer paid, she "continued to work" in her role as Executive Vice President of Marketing. FAC ¶ 23. And Fischer alleges that, even after he was no longer paid his full salary, he too "continued to work for Nirvana" in his role as Vice President of Sales. Id. ¶ 33. Both plaintiffs have therefore alleged that they continued to work in the normal course even after they were no longer paid their full salaries. These allegations are more than sufficient at this stage of the litigation.

Second, defendant asserts that Fischer has no enforceable contract because the Fischer Offer Letter is merely an offer letter. Mot. 13. Defendant notes that the Offer Letter states that "[u]ntil the definitive Employment Agreement is executed and

delivered . . . neither party shall have any binding obligation to the other." Id. (citing Fischer Offer Letter at 2). In response, plaintiff submits that, even though the parties never executed an employment agreement, they nevertheless acted pursuant to the Offer Letter for over two years such that Fischer has "a verbal and/or quasi-contract claim." Opp. 2. Defendant then asserts, inconsistently, that a quasi-contract claim cannot exist where there is a valid and enforceable written contract. Reply 3.

The issue of Fischer's contractual relationship with Nirvana has not been adequately briefed by the parties. It is clear that Fischer and Nirvana did not execute an employment agreement similar to Lorber's agreement. Compare FAC, Ex. A, with id., Ex. D. Nevertheless, defendant proceeded to an employment relationship with Fischer for more than two years. Id. ¶¶ 28-35. Without adequate briefing, the Court declines, at this stage of the litigation, to dismiss Fischer's breach of contract claim, which may be sustained by the sufficient pleading of a course of conduct consistent with employment. See Marchiano v. Berlamino, 2012 WL 4215767, at *7 (S.D.N.Y. Sept. 20, 2012) (collecting cases) (declining to dismiss a claim without parties' briefing on the issue).

Third, defendant contends that plaintiffs' claims for unjust enrichment are duplicative of their breach of contract claims and should be dismissed. Mot. 30. An unjust enrichment claim is not

available "whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact." Mackenzie v. Waypointe Partners Mgmt. LLC, 2025 WL 388296, at *6 (S.D.N.Y. Feb. 4, 2025). "However, a plaintiff may proceed on both theories when 'a bona fide dispute exists as to the existence of the contract.'" Id. (quoting Beth Israel Med. Ctr. V. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 587 (2d Cir. 2006)). See also Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447, 468 (S.D.N.Y. 2009) (declining to dismiss unjust enrichment claim "at this stage based on the purported existence of a contract"); Lynx Whole Loan Acquisition LLC v. Caliber Home Loans Inc., 2026 WL 2269078, at *4 (S.D.N.Y. Aug. 6, 2026). Defendant does not dispute the existence of a valid and enforceable contract between it and Lorber. However, the parties dispute the validity -- and existence -- of Fischer's contract with Nirvana. Therefore, the Court grants the motion to dismiss the unjust enrichment claim as to Lorber but denies the motion as to Fischer on this basis.

Fourth, defendant asserts that plaintiffs have failed to plead a benefit received by Nirvana. Mot. 30. "A plaintiff alleging unjust enrichment under New York law must adequately plead that: (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."

Mackenzie, 2025 WL 388296, at *6 (internal quotations omitted). As explained previously, Fischer "continued to work for Nirvana" in his role as Vice President of Sales during the relevant period. FAC ¶ 33. The benefit Nirvana received is the value of Fischer's services as an employee. That is a benefit Nirvana was willing to pay $185,000 annually for nearly two years to receive. Thus, the Court also declines to dismiss Fischer's unjust enrichment claim on this basis.

**IV. John Doe Defendants**

In addition to Nirvana, Plaintiffs sued ten John Doe defendants. Their theory is that these defendants "are persons whose identities are currently unknown but who act, or have acted, directly or indirectly, in the interest of Nirvana" and "have personal liability under the FLSA and/or are officers and/or agents of Nirvana who have liability under the New York Labor laws and/or the Wage Theft Prevention Act." FAC ¶ 5. Nirvana moves to dismiss the John Doe defendants from the case. Mot. 32-33. It argues that plaintiffs know the identity of the alleged John Does and therefore cannot rely on naming John Doe defendants, and further that plaintiffs have not pleaded any specific wrongdoing by the John Doe defendants. Id. In response, plaintiffs assert that they do not "know who controlled their pay and caused Nirvana to violate the FLSA and the NYLL." Opp. 14.

"Although courts sometimes allow plaintiffs to plead causes of action against a 'John Doe' defendant where a plaintiff does not know the defendant's identity, they ultimately require plaintiffs, under Rule 8(a), to allege specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense." Ritchie v. N. Leasing Sys., Inc., 14 F. Supp. 3d 229, 237–38 (S.D.N.Y. 2014) (collecting cases).

Here, plaintiffs have provided virtually no detail regarding the John Doe defendants. Thus, the Court grants defendant's motion to dismiss all claims against the John Doe defendants.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted in part and denied in part. To summarize, the Court dismisses the following claims: plaintiffs' FLSA overtime claims; all claims of the putative collective; plaintiffs' New York Labor Law Section 195 and Section 590 claims; Lorber's claim for unjust enrichment; and all claims against the John Doe defendants. The Court denies defendant's motion to dismiss plaintiffs' FLSA minimum wage claims; plaintiffs' New York Labor Law Section 191 and Section 215 claims; plaintiffs' breach of contract claims; and Fischer's claim for unjust enrichment.

The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 17.

Dated: New York, New York
September 24, 2026

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE